IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRIAN MOSER, individually and as the next friend of JACK MOSER,**   Plaintiffs,   v.   **CHICAGO POLICE OFFICERS G. GOUNARIS (Star #19235), A.M. BARREZUETA (Star #17671) SGT. KANE (Star # Unknown), UNKNOWN CHICAGO POLICE OFFICERS and the City of CHICAGO** | RECEIVED: SEP 05, 2008   08CV5067   JUDGE MANNING   MAGISTRATE JUDGE DENLOW   RCC |

### Civil Complaint

**NOW COMES** the Plaintiffs, Brian Moser, individually, and as the next best friend of minor child, Jack Moser by and through their attorneys, THE LAW OFFICE OF BRENDAN SHILLER, LLC, complaining of the Defendants, Chicago Police Officers G. Gounaris (Star #19235), A.M. Barrezueta (Star #17671**)**, Sergeant Kane (Star # Unknown), other unknown Chicago Police Department Officers and the City of Chicago, and in support thereof states as follows:

### Introduction

1. This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiff of rights secured by the Constitution and laws of the United States.  In sum, Plaintiff Brian Moser was unlawfully seized, falsely arrested and imprisoned, and maliciously prosecuted by the Defendants in violation of his right to equal protection of the law. Defendants intentionally inflicted emotional

1

distress on both Plaintiffs and Plaintiffs have been harmed greatly by the unconstitutional conduct of the Defendants.

## Jurisdiction

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C., § 1983, the Judicial Code, 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction for attendant state claims as provided under U.S.C., § 1367(a).

## The Parties

3. Plaintiff Brian Moser is a citizen of the Unites States and currently resides at 655 W. Irving Park Road, #502 in Chicago, Illinois.

4. Plaintiff Jack Moser, is the minor son of Brian Moser and at the time of the complained of incident resided at 240 W. Scott with his father and mother in Chicago, Illinois.

5. Defendant Officers were, at the time of this occurrence, employees of the Chicago Police Department and acted under their authority as duly appointed police officers in the Chicago Police Department at all relevant times.

6. Defendant City of Chicago is a municipal corporation organized under the laws of the State of Illinois, which operates the Chicago Police Department.  Defendant City of Chicago is ultimately responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby.

**Background Facts**

7. On Father's Day, June 17, 2007, Plaintiff Brian Moser spent the day with his son, Plaintiff Jack Moser and other fathers in their family.

8. Plaintiff Brian Moser was in the midst of an ugly divorce from his wife, Nancy Moser, which was magnified because they were still living together in the marital home.

9. Prior to June 17, 2007, Nancy Moser had called police to the home on at least three separate occasions, in an unsuccessful effort to have Plaintiff Brian Moser removed from the home, during the divorce proceedings and each time police officers discerned that Nancy Moser was the aggressor and domestic abuser.

10. Plaintiff Brian Moser operated his business from the marital home and two days prior to the complained of incident on June 15, 2007, had been granted a restraining order against Nancy Moser, to stop her from breaking into Brian's home office and destroying documents and sending menacing emails to his clients.

11. Nancy Moser was infuriated by the restraining order being granted by the judge.

12. On June 17th, Brian and Jack Moser had been out of the home all day celebrating Father's Day.

13. During the day, Nancy Moser repeatedly called from her cell phone and sent emails and requested that when she left town for two (2) weeks for an upcoming trip, that Brian would allow Jack to "move in" with her sister.

14. Brian Moser repeatedly said, "no," that it was unnecessary for Jack to move out of the home, because he would be home, and available and willing to care for their son, as he always does.

3

15. When Plaintiffs arrived home, Nancy Moser was standing in their rear yard, with the cordless home phone in her hand.

16. When Moser did not say anything and began walking with Jack into the home, Nancy became irate and began cursing and yelling about how Jack was going to live with her sister.

17. Brian Moser then took Jack to his room and asked him to stay there while Brian talked to Nancy.

18. When Brian returned to the backyard to talk to Nancy, he attempted to close the screen door behind him.

19. At this point, Nancy grabbed the door and repeatedly slammed his hand in the door, which immediately began bleeding profusely.

20. Brian returned into the home and grabbed a towel and wrapped it around his hand.

21. As Brian turned to check on Jack, he heard Nancy on the phone calling the police and telling them that her husband Brian had a gun and was trying to kill her.

22. The call was falsely dispatched as a "man with a gun" and subsequent dispatches corrected the call, but were ignored by responding officers.

23. Within minutes the police had shut down the whole block and Plaintiff Brian Moser heard a SWAT team member on a bullhorn outside of his home saying, "Put your weapon down. Come out of the house."

24. Brian went to the door, followed by Jack and cracked the door, and the barrels of three (3) rifles were pressed against Brian's face.

25. Officers ordered the Plaintiffs down on the ground both Brian and Jack got down, face down on the ground as the officers pushed through the door and entered the home.

26. At least twelve (12) officers entered the home, with weapons drawn.

27. Brian was handcuffed and shackled by his feet as well on the floor.

28. Brian continually asked the officers what was going on and why they came into to his home in this manner.

29. The officers responded by telling him to "shut the fuck up" and to "shut your damn mouth."

30. The officers asked Moser where the weapons were in the home and he told him that he had not brandished any weapons, but there was a Civil War antique inoperable gun that was passed down to him as an heirloom from his grandfather, that was mounted in a glass display case.

31. Brian also told officers about an heirloom Boy Scout pocket knife that had been given to him by his deceased father.

32. Defendant Officer Gounaris took the knife, but it was not inventoried and to date, has not been returned to Brian Moser.

33. Defendant Officers were told by Brian Moser where the antique firearm was, and they unnecessarily smashed the glass display case to remove it.

34. During this entire time, Brian Moser repeatedly tried to explain to Defendant Officers about the restraining order he had against his wife and tried to show them the paperwork and the order he had gotten two days prior from the judge.

35. Additionally, Brian Moser asked Defendant Officers to check Chicago Police Department records to verify that officers had been dispatched to his home on other occasions when he had been the victim of domestic attacks from his wife.

36. Officer Gounaris told Brian Moser to "Go to fucking hell" and that "We don't need to look for anything else."

37. Additionally, Officer Gounaris told Brian Moser that he now was going to be charged with a felony because of the gun.

38. Then, Brian Moser was carried outside of his home and placed into the back of a squad car.

39. When Defendant Officers spoke to Brian Moser during this time, they communicated to him that it had clearly been a vindictive effort on the part of his wife, but that since he was a man, he had to go to jail anyway.

40. When Brian Moser arrived at the 18th district police station, his finger continued to throb and bleed profusely.

41. Brian Moser was given Band-Aids and asked if he needed to go to the hospital, to which he responded yes, as he continued to bleed profusely from his hand.

42. A white, male officer with blond hair, a large build, appearing to be in his earlier thirties, then came to Moser and called him a sissy.

43. This same otherwise unidentified officer in plainclothes then told Moser that if he went to the hospital, he would miss his court date and would have to spend a week in jail.

44. Brian Moser has since lost all feeling and use of that finger and reporting officers failed to document his injury in police reports.

45. Brian Moser was charged with false and trumped up charges of Domestic Battery, Felony Possession of a Firearm and Failure to have a Firearm Owner Identification (FOID) Card.

46. Brian Moser was found Not Guilty of all charges on November 15, 2007.

### Count 1—Liability Under 42 U.S.C. § 1983--Denial of Equal Protection
### (Brian Moser)

47. Plaintiffs re-allege and reincorporate all previous paragraphs.

48. Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

49. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny any person the equal protection of the laws.

50. Defendant Officers' actions as alleged herein were motivated by anti-male gender animus.  During, the actions as alleged herein, Defendant Officers subjected Moser to statements that this would not be happening to him if he were the woman as well as directing derogatory terms toward him regarding his masculinity and his injury.

51. Defendant Officers were acting under "color of law."

52. Defendants purposefully singled out Brian Moser for unequal treatment based on his sex.

53. As a result of Defendant Officers' denial of equal protection, Moser sustained permanent injury to his hand as a result of the denial of medical attention, as well as injuries in the form of, *inter alia*, mental and emotional pain and suffering, humiliation, and past and future psychological damage. As a result Defendant

Officers' denial of equal protection, Moser also lost wages and incurred additional medical expenses, costs and attorneys' fees.

54. Defendant Officers deprived Moser of the equal protection of the laws in violation of Moser's rights under the Fourteenth Amendment to the U.S. Constitution. Defendant Officers are, therefore, liable to Moser under 42 U.S.C. § 1983.

55. Wherefore, Plaintiff requests actual, punitive and compensatory damages in an amount deemed at time of trial to be just, and fair, as well as attorney's fees and costs.

### Count 2—Denial of Medical Attention (Brian Moser)

56. Plaintiffs re-allege and reincorporate all previous paragraphs.

57. The Fourteenth Amendment to the United States Constitution provides for citizens who have been arrested or are being detained prior to conviction, a substantive due process right to receive medical attention.

58. When Brian Moser was arrested by Defendant Officers, he had been injured as a result of a domestic attack by his wife.

59. Defendant Officers were aware of Brian Moser's injury, as he was bleeding profusely and complained on several occasions of the extreme pain and throbbing and requested to go to the hospital to receive medical attention.

60. One of the Defendant Officers referred to Brian Moser as a "sissy" when he responded "yes" when asked about going to the hospital and then told him that he would have to stay in jail for a week and would miss his court date if he received medical treatment, which is objectively unreasonable.

61. Defendant Officers deprived Brian Moser of due process of the law in violation of Moser's rights under the Fourteenth Amendment to the U.S. Constitution. Defendant Officers are, therefore, liable to Moser under 42 U.S.C. § 1983.

62. The acts and omissions of Defendant Officers in denying medical attention to Plaintiff Moser, despite his requests, were knowingly and willfully undertaken and said failure to supply that care was not reasonably related to any legitimate governmental objective.

63. Brian Moser was harmed by the unconstitutional acts of the Defendants, as evidenced by the loss of feeling and use of the finger that was injured.

64. Wherefore, Plaintiff requests actual, punitive and compensatory damages in an amount deemed at time of trial to be just, and fair, as well as attorney's fees and costs.

## Count 3—Assault (Jack and Brian Moser)

65. Plaintiffs re-allege and reincorporate all previous paragraphs.

66. The Defendant Officers intentionally created an apprehension of immediate physical harm by approaching the Moser home yelling into a bullhorn and by sticking three (3) guns into Brian Moser's face and ordering he and Jack facedown onto the ground.

67. These overt gestures created a reasonable fear in both Jack and Brian Moser and resulted in obvious harmful touching.

68. These actions were objectively unreasonable and were undertaken intentionally with malice, willfulness and reckless indifference to Plaintiffs' rights.

69. As a result of the Defendant Officers conduct, Plaintiffs sustained both physical and emotional injuries, including anxiety, depression, nightmares, day-mares, and unreasonable apprehension towards members of law enforcement.

70. Wherefore, Plaintiffs demand judgment against Defendant Officers for actual, punitive and compensatory damages in an amount deemed at time of trial to be fair and just, as well as reasonable attorneys' fees and legal costs.

**Count 4—Intentional Infliction of Emotional Distress (Jack and Brian Moser)**

71. Plaintiffs re-allege and reincorporate by reference all of the allegations in the preceding paragraphs.

72. The acts and conduct of Defendant Officers as set forth above were extreme and outrageous.

73. Particularly, the conduct of Defendant Officers in ordering Jack and Brian Moser to the ground at gunpoint was reasonably calculated to cause immense emotional distress to Plaintiffs.

74. Defendant Officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs.

75. Defendant Officer's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

76. Said actions and conduct did directly and proximately cause Plaintiffs to suffer various severe emotional and physical problems including anxiety, depression, nightmares, day-mares, and unreasonable apprehension towards members of law enforcement.

77. WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor, awarding actual, compensatory and punitive damages, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate.

### Count 5—Failure to Provide Police Protection--Domestic Violence

78. Plaintiffs re-allege and reincorporate by reference all of the allegations in the preceding paragraphs.

79. Defendant Officers during this complained of incident, failed to respond properly to the call to Brian Moser's home.

80. Despite being advised of a pattern and history of Brian Moser's wife of committing violent attacks against him and calling the police to the marital home, as well as a valid restraining order against Nancy Moser, police charged Plaintiff with various crimes and sustained the charges against him, until such time as he was acquitted.

81. Defendant Officers acted in accordance with the unwritten policy of the Chicago Police Department to treat the male person involved as the perpetrator when calls regarding domestic violence are received, and to failed to investigate and protect Brian Moser from physical harm, as well as harm to his business and additional substantial financial repercussions that followed as a result of the complained of incident.

82. These unconstitutional actions were committed by defendants knowingly and willfully and without regard for the rights of Brian Moser.

83. WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor, awarding actual, compensatory and punitive damages, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate.

### Count 6—State Claim Respondent Superior

84. Plaintiffs re-allege and incorporate by reference all of the allegations in the preceding paragraphs.

85. In committing the acts alleged, Defendant Officers were members and agents of the Chicago Police Department, acting at all relevant times within the scope of their employment.

86. Defendant City of Chicago is the employer of the Defendant Officers.

100. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

101. As a proximate cause of Defendant Officer's unlawful acts, which occurred within the scope of their employment activities, Plaintiff suffered physical and emotional injuries.

102. WHEREFORE, Plaintiffs demand judgment against Defendants City of Chicago for substantial actual, compensatory, and punitive damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

_____
Brendan Shiller

Law Office of Brendan Shiller, LLC
36 S. Wabash, Suite 1310
Chicago, IL 60603
312-332-6462
ARDC: 6279789